IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARQUICE DONNELL SAVAGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-CV-0129-GKF-SH |
| | ) |
| THE STATE OF OKLAHOMA, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Marquice Donnell Savage, a self-represented pretrial detainee[1] appearing in forma pauperis, seeks relief under 42 U.S.C. §§ 1983 and 1985, through a Complaint for Violation of Civil Rights filed March 31, 2023 ("Complaint") (Dkt. 1) against four defendants: the State of Oklahoma, Tulsa County Assistant District Attorney Alison Nutt, the City of Tulsa, and Tulsa Police Detective Lacy Lansdown.[2] Before the Court are five motions: a Motion to Dismiss Plaintiff's Complaint and Brief in Support filed by Defendant Lacy Lansdown ("Lansdown Motion") (Dkt. 29); a Motion to Dismiss with Brief in Support filed by Defendants the State of Oklahoma and Alison Nutt ("State Motion") (Dkt. 30); Savage's First Motion to Amend (Dkt. 31);

---

[1] Because Savage appears without counsel, the Court liberally construes his filings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For consistency, the Court's citations to all documents in the record refer to the CM/ECF header pagination.

[2] It is not entirely clear from the Complaint whether Savage intends to separately sue the State of Oklahoma and the City of Tulsa or whether he identifies the State and the City as defendants only to show that he is asserting official capacity claims against Lansdown and Nutt. Dkt. 1, at 1-2; *see Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978))). However, because Savage included all four defendants in the caption of the Complaint, the Court construes the Complaint as naming all four as defendants.

Savage's Second Motion to Amend (Dkt. 38); and Savage's Third Motion to Amend (Dkt. 45). For the following reasons, the Court grants the State Motion; dismisses the Complaint as to all claims raised therein; denies as moot the Lansdown Motion; and denies all three Motions to Amend.

I.  **Complaint**

Liberally construing the Complaint, the Court discerns the following factual allegations and claims.[3] On August 13, 2019, the State of Oklahoma filed an Information, in Tulsa County District Court Case No. CF-2019-3801, charging Savage with one count of Assault and Battery, Domestic, with a Deadly Weapon, in violation of Okla. Stat. tit. 21, § 644(D)(2). Dkt. 1, at 8; Dkt. 11, at 5. That same day, a state judicial officer issued a warrant for Savage's arrest. Dkt. 11, at 5.[4] Savage was arrested two or three days later, entered a plea of not guilty, and a state judicial officer remanded him to custody. *Id.* A preliminary hearing was held on October 4, 2019, October

---

[3] Savage twice supplemented the Complaint with supporting exhibits. The first exhibit is a copy of the docket sheet from Tulsa County District Court Case No. CF-2019-3801. Dkt. 11. Lansdown attaches a copy of the same docket sheet with her dismissal motion. Dkt. 29-2. Even if neither party attached the docket sheet, this Court could take judicial notice of this public record without converting the dismissal motion into a motion for summary judgment. *Gee v. Pacheco*, 627 F.3d 1178, 1186-87 (10th Cir. 2010). The Court therefore will consider the docket sheet in evaluating the sufficiency of the Complaint. The second exhibit is a copy of what appears to be a historical document titled "(1724) Louisiana's Code Noir," and that is also described as a "slave code." Dkt. 33. Savage does not explain how this exhibit is relevant to any claims he attempts to identify in the Complaint, and the Court declines to consider it in evaluating the sufficiency of the Complaint.

[4] Lansdown attached to her dismissal motion a copy of the probable cause affidavit that Lansdown submitted to obtain a warrant for Savage's arrest. Dkt. 29-1. However, Savage does not refer to the probable cause affidavit in the Complaint and it is not apparent from the Complaint that the probable cause affidavit is central to any claims he raises, or attempts to raise, in the Complaint. Rather, Savage identifies his claims as arising from the actions and omissions of Nutt and Lansdown that allegedly occurred at his trial on October 14, 2021. Dkt. 1, generally. The Court therefore will not consider any facts from the probable cause affidavit to evaluate the sufficiency of the Complaint. *Gee*, 627 F.3d at 1186.

9, 2019, and November 8, 2019. *Id.* at 6-7. After hearing from three witnesses, a state judicial officer found probable cause that Savage committed the crime charged and bound him over for a jury trial. *Id.* at 7. The State amended the charge on February 26, 2020, to allege the use of a dangerous, not deadly, weapon. *Id.* at 10. Savage was "held in jail almost 2 years" following his arrest, and his case proceeded to trial in October 2021. Dkt. 1, at 4-5, 8, 10; Dkt. 11, at 15-16. Sometime before Savage's trial, one of his attorneys, Courtney Rainbolt, gave Assistant District Attorney Alison Nutt a copy of the victim's written statement wherein the victim averred that Savage "is innocent." Dkt. 1, at 6-7. Nutt ignored the victim's statement and continued to prosecute Savage. *Id.*

On October 14, 2021, Detective Lacy Lansdown "gave false testimony at trial." *Id.* at 5, 7-8, 10. Lansdown and Nutt "both claimed that [Savage] struck the victim . . . with some kind of blunt force object on the head and hand." *Id.* at 5. "The State's exhibits showed pictures of the victim's injuries at trial." *Id.* "The State showed the jury only the exhibits that showed the victim's head and hand, but the state [prosecutor,] Alison Nutt[,] hid the exhibits that showed the rest of the victim's injuries to the victim's legs, knees, and back which was consistent with a fall." *Id.* at 5, 7-8. Savage's attorney, Kyle Killam, "redirected and showed the jury the rest of the exhibits which showed the victim's legs, back, and knees." *Id.* The jury found Savage "not guilty." *Id.* at 5; Dkt. 11, at 16.

Based on these factual allegations, Savage claims that Lansdown and Nutt, acting in their individual and official capacities, (1) conspired to interfere with his civil rights and deprive him of equal protection of the law, in violation of 42 U.S.C. § 1985(3); and (2) violated his Fourteenth Amendment rights to due process and equal protection of the laws, a constitutional violation that can be remedied under 42 U.S.C. § 1983. Dkt. 1, at 3, 5-9. Savage describes his resulting injuries

as follows: "I am severely traumatized emotionally and mentally[.] I was strip searched, assaulted by Detention officers[.] I had to be placed on strong pain meds over 6 months[.] I lost my house I was evicted from my apartment I am homeless behind this." *Id.* at 10. Savage seeks more than one hundred million dollars in damages. *Id.*; Dkt. 24, at 1.

## II. Motions to Dismiss

Defendants Lansdown, Nutt, and the State of Oklahoma move to dismiss the Complaint, under Federal Rule of Civil Procedure 12(b)(1), for lack of jurisdiction, and under Rule 12(b)(6), for failure to state a claim on which relief may be granted. Dkts. 29, 30.

### A. Legal principles

Rule 12(b)(1) permits a party to seek dismissal on grounds that the district court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party seeking dismissal may "mount[] either a facial or factual attack." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* "When a defendant brings a factual attack, a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)).

Rule 12(b)(6) permits a party to seek dismissal on grounds that the facts alleged in the complaint "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion seeking dismissal under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to plead a facially plausible claim. *Id.* In evaluating the sufficiency of a complaint, the court must "take the well-pleaded factual allegations in the complaint as true" and view the facts "in the light most favorable to" the plaintiff. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* And the rule that requires courts to liberally construe pleadings drafted by self-represented plaintiffs "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. Instead, that rule requires a court to consider with leniency the plaintiff's "failure to cite legal authority," "confusion of various legal theories," "poor syntax and sentence construction," or "unfamiliarity with pleading requirements" and to determine whether "the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail." *Id.*[5]

---

[5] Savage argues, in part, that this Court should deny both dismissal motions because this Court previously determined that the Complaint was sufficient to state one or more cognizable claims. Dkts. 34, 37, 39. The Court did make that determination when it screened the Complaint pursuant to 28 U.S.C. § 1915A. Dkt. 9. But the fact that a complaint survives preliminary screening under § 1915A neither precludes a defendant from seeking dismissal under Rule 12(b)(6) nor requires a court to deny such a motion. *See, e.g.*, *Garewal v. Sliz*, 611 F. App'x 926, 931 (10th Cir. 2015) ("Simply put, the fact that a district court does not dismiss a complaint under § 1915A does not mean that the complaint will necessarily withstand a defendant's challenge to its plausibility under Rule 12(b)(6)."); *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (reasoning that § 1915's "sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring"). The Court therefore rejects Savage's argument that both dismissal motions should be summarily denied.

B.     **State Motion**[6]

As the Court reads the Complaint, and accepting Savage's factual allegations as true, Savage claims that the State and Nutt, acting in her official capacity as a prosecutor, violated his Fourteenth Amendment rights to equal protection of the laws and due process by prosecuting him for assault and battery because Nutt knew that the victim asserted before trial that Savage is "innocent," Nutt presented Lansdown's false testimony at trial, and Nutt purposefully hid exhibits from the jury that supported Savage's position that the victim sustained injuries from a fall, thereby entitling Savage to relief under § 1983. Savage also claims that Nutt conspired with Lansdown to deprive him of equal protection of the law and that Nutt acted on that conspiracy at trial by hiding certain exhibits from the jury and by presenting Lansdown's false testimony, thereby entitling Savage to relief under § 1985(3).

1.     **Sovereign immunity**

The State and Nutt seek dismissal, in part, under Rule 12(b)(1), asserting that the Eleventh Amendment provides them sovereign immunity from a suit seeking money damages and thus

---

[6] The State Motion was filed on August 31, 2023. Dkt. 31. Savage's response brief was due September 21, 2023. LCvR7-1(e). Savage filed a response in opposition to the State Motion on September 26, 2023. Dkt. 34. Because the record indicates that Savage delivered this response to jail officials for mailing on September 12, 2023, the Court will apply the prison mailbox rule to deems that response brief timely. *Houston v. Lack*, 487 U.S. 266, 275-76 (1988). Savage filed a second "response" to the State Motion on October 4, 2023, and the Court directed the Clerk of Court to docket that response as a "supplement" to the timely response. Dkt. 35. The Court will thus consider Dkts. 34 and 35, collectively, as Savage's response to the State Motion. However, to the extent Savage asserts new claims and new factual allegations, or attempts to add new defendants, in his response to the State Motion, the Court will not construe the response to the State Motion as a potential request to amend the Complaint. *Cf. Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 971 (10th Cir. 2021) (reiterating that this circuit's precedents "interpret the inclusion of new allegations in a response to a motion for summary judgment as a potential request to amend the complaint" (quoting *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003))). As previously stated, Savage has filed three separate Motions to Amend thus demonstrating his ability to properly request leave to amend. The Court thus declines to exercise its discretion to interpret Savage's response to the State Motion as also seeking leave to amend the Complaint.

deprives this Court of subject-matter jurisdiction over all claims Savage asserts against the State and against Nutt, in her official capacity.[7] Dkt. 30, at 8-10.

The Court agrees. The Eleventh Amendment generally shields states from, and deprives a federal court of jurisdiction over, claims in which private citizens seek money damages from a sovereign state. *See Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006); *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) (recognizing that "[n]onconsenting States may not be sued by private individuals in federal court" (citation and internal quotation marks omitted)). A state's sovereign immunity also shields state officers from claims in which private citizens seek money damages from the state officers to the extent those officers are sued in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that, under the Eleventh Amendment, states are generally immune from suit and that a suit against a state official "is no different from a suit against the State itself"); *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1213 (10th Cir. 2022) ("Eleventh Amendment sovereign immunity bars suits for money damages against states, state agencies, and state officers in their official capacities."), *cert. denied sub nom. San Juan Cnty. v. Chilcoat*, 143 S. Ct. 1748 (2023).

Exceptions to sovereign immunity exist, but none applies here. First, under *Ex Parte Young*, 209 U.S. 123 (1908), an exception exists if the plaintiff is (1) suing a state official rather than the state itself, (2) alleges an ongoing violation of federal law, and (3) seeks only prospective relief. *Chilcoat*, 41 F.3d at 1214. This exception does not apply because Savage seeks money damages for alleged past misconduct, not prospective relief for an alleged ongoing violation of

---

[7] As an assistant district attorney, Nutt is an officer of the State. *See Arnold v. McClain*, 926 F.2d 963, 965-66 (10th Cir. 1991) (discussing Oklahoma law); *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (holding that when a district attorney is a state officer, she is entitled to Eleventh Amendment immunity).

7

federal law. Second, a state may waive its sovereign immunity and consent to be sued in federal court. *Will*, 491 U.S. at 66; *Opala*, 454 F.3d at 1157; *see also R.R. Co. v. Tennessee*, 101 U.S. 337, 339 (1880) ("The principle is elementary that a State cannot be sued in its own courts without its consent."). This exception does not apply because Oklahoma has expressed its intent to maintain sovereign immunity for itself, its political subdivisions, and its employees acting within the scope of their employment, except as specifically set forth in the Oklahoma Governmental Tort Claims Act. *See* 51 Okla. Stat. §§ 151 *et seq.*; *Gradle v. Oklahoma*, 203 F. App'x 179, 183 (10th Cir. 2006). Third, Congress may override, or abrogate, a state's sovereign immunity through clear and express legislation. *Will*, 491 U.S. at 66; *see Green v. Mansour*, 474 U.S. 64, 68 (1985) ("Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."). This exception does not apply because Congress has not abrogated Oklahoma's sovereign immunity as to claims asserted under either § 1983 or § 1985(3). *See, e.g.*, *Will*, 491 U.S. at 67 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent."); *Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (affirming dismissal of claims against state entities on the grounds that the state entities' immunity "had not been abrogated or waived in connection with §§ 1981, 1983, 1985, or 1986"); *Carter v. Littlefield*, No. 20-CV-0365-JFH-JFJ, 2023 WL 3486970, at *3 (N.D. Okla. May 16, 2023) (unpublished) (citing *Patillo* for proposition that Congress did not abrogate sovereign immunity as to claims asserted under §§ 1981, 1983, or 1986 and dismissing plaintiff's claims as barred by Eleventh Amendment).

Savage resists the conclusion that the Eleventh Amendment bars his claims against the State and his official capacity claims against Nutt, arguing that the plain language of the Eleventh

8

Amendment does not immunize a state against a lawsuit filed by the state's own citizens. Dkt. 34, at 8-10. This is a fair point. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Nonetheless, the United States Supreme Court "long ago held that the Eleventh Amendment bars a citizen from bringing suit against the citizen's own State in federal court, even though the express terms of the Amendment refer only to suits by citizens of another State." *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). The Court thus rejects Savage's plain-language argument.

Because the Eleventh Amendment deprives this Court of subject-matter jurisdiction over all claims Savage asserts against the State and against Nutt, in her official capacity, the Court finds and concludes that those claims shall be dismissed without prejudice.

### 2. Prosecutorial immunity

Next, the State and Nutt seek dismissal, in part, under Rule 12(b)(6), arguing that Savage fails to state any claims upon which relief can be granted because Nutt is entitled to prosecutorial immunity as to all claims Savage asserts against her in her individual capacity. Dkt. 30, at 4-7.

Again, the Court agrees.[8] "Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983." *Chilcoat*, 41 F.4th at 1208 (quoting *Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007)); *see also Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) (explaining

---

[8] Because the Court agrees that prosecutorial immunity bars relief as to all individual capacity claims Savage asserts against Nutt, the Court declines to address any remaining arguments for dismissal under Rule 12(b)(6) that are included in the State Motion. *See* Dkt. 30, at 7-9.

that prosecutors are "fully protected by absolute immunity when performing the traditional functions of an advocate"). Among other things, a prosecutor's absolute immunity applies to the prosecutor's decisions on "whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976); *accord Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1164 (10th Cir. 2009) ("Prosecutors are entitled to absolute immunity for their decisions to prosecute, . . . their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court."). And a prosecutor's absolute immunity extends to "the culpable use by the prosecution of misleading or false testimony," *Imbler*, 424 U.S. at 414, "suppressions of evidence favorable to [a criminal defendant]," *id.* at 414-15, and "conspiracies to present false testimony," *Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir. 1991).

Even liberally construing Savage's factual allegations to support his claims against Nutt, in her individual capacity, those allegations focus solely on alleged actions Nutt performed in her role as an advocate—namely, her decisions at Savage's trial to present Lansdown's allegedly false testimony and to present certain exhibits without presenting other exhibits Savage characterizes as favorable to him. For those actions, Nutt has absolute prosecutorial immunity. *Imbler*, 424 U.S. at 414-15, 431 n.33; *Nielander*, 582 F.3d at 1164. Further, even accepting as true Savage's allegations that Nutt knowingly presented false testimony at trial and conspired with Lansdown to present that false testimony, she has absolute prosecutorial immunity for these acts as well. *Miller*, 948 F.2d at 1570; *see also Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 580 (8th Cir. 2006) (concluding that "a prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts"); *Rowe v. City of Fort*

*Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002) ("It would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune.").

Liberally construing Savage's responses, the Court discerns two arguments against Nutt's assertion of prosecutorial immunity. Neither is persuasive. First, Savage appears to argue that applying prosecutorial immunity to bar his claims against Nutt would effectively give Nutt, and all other prosecutors, freedom to commit crimes including "stalking, intimidation, armed robbery, . . . and even murder." Dkt. 34, at 10. Second, Savage appears to argue that applying prosecutorial immunity to bar his claims against Nutt is akin to "support[ing] Jim Crows Laws and the 1724 Louisiana's Code of Noir." *Id.* These arguments misunderstand the scope of prosecutorial immunity, both in general and as applied to the facts of this case.

Because the factual allegations to support Savage's individual capacity claims against Nutt describe actions Nutt performed at his trial in her role as an advocate, Nutt has absolute prosecutorial immunity. The Court thus finds and concludes that all claims asserted against Nutt, in her individual capacity, shall be dismissed for failure to state a claim upon which relief can be granted.

### C. Lansdown Motion[9]

As the Court reads the Complaint, and accepting Savage's factual allegations as true, Savage claims that Lansdown violated his Fourteenth Amendment rights to equal protection of the laws and due process by giving false testimony at his trial, thereby entitling Savage to relief under § 1983. Savage also claims that Lansdown conspired with Nutt to deprive him of equal protection of the law and that Lansdown acted on that conspiracy at trial by giving false testimony at trial, thereby entitling Savage to relief under § 1985(3).

Lansdown, however, construes the Complaint as raising "claims of False Arrest, Malicious Prosecution, and Conspiracy," and contends the Complaint should be dismissed, under Rule 12(b)(6), because the factual allegations are not sufficient to state any plausible claims. Dkt. 29, at 4-8. Lansdown also asserts a qualified-immunity defense. *Id.* at 8-11. Savage primarily responds to the Lansdown Motion by arguing that his factual allegations, accepted as true, are sufficient to state plausible claims against Lansdown. Dkts. 37, 39, 41.

---

[9] On October 10, 2023, Savage filed a Motion to Deny the City of Tulsa's Motion to Dismiss and Brief in Support ("Motion to Deny") (Dkt. 37). The City of Tulsa, however, did not file a dismissal motion. Having reviewed the Motion to Deny and other submissions from Savage indicating he was not timely served a copy of the Lansdown Motion, *see* Dkts. 36, 39, 41, the Court construes the Motion to Deny as an attempt to respond to the Lansdown Motion. The Court therefore directs the Clerk of Court to modify the docket to reflect that the Motion to Deny (Dkt. 37) is a Response in Opposition to the Lansdown Motion (Dkt. 29). Savage also filed a "Letter," that this Court construed as a Supplement to his response to the Lansdown Motion (Dkt. 41). The Court will thus consider Dkts. 37, 39, and 41, collectively, as Savage's response in opposition to the Lansdown Motion. Over one month after Savage received a copy of the Lansdown Motion, and after he filed the three documents the Court construes as his response to that motion, Savage filed a "Reply in Support of Motion to Deny the State of Oklahoma and Det. Lacy Lansdown's Motion to Dismiss" (Dkt. 42). Because this reply is an improper and untimely attempt to file a supplemental brief, and the Court will not consider any arguments or allegations in this reply. *See* LCvR7-1(f) (providing that a supplemental brief "may be filed only upon motion and leave of Court"). Further, to the extent Savage includes new allegations, new claims, or new defendants in his response to the Lansdown Motion, the Court declines to consider them as proposed amendments to the Complaint for the reasons previously stated. *See supra* n. 6.

Before considering the parties' arguments, the Court finds it necessary to consider two matters that are not addressed in the Lansdown Motion. And the Court finds it appropriate to address these matters, sua sponte, under its continuing obligation to screen a complaint filed by a plaintiff appearing in forma pauperis. *See* 28 U.S.C. § 1915(e)(2)(B) (providing, in in forma pauperis proceedings, that "the court shall dismiss the case at any time if the court determines . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief").

First, as previously discussed, Savage purports to sue Lansdown in her individual and official capacities. To the extent Savage sues Lansdown in her official capacity, he effectively asserts his claims against the City of Tulsa. *Graham*, 473 U.S. at 165-66. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation and internal quotation marks omitted). Having carefully and liberally construed the Complaint, the Court finds no allegations plausibly suggesting that the City of Tulsa could be liable, under a theory of municipal liability, for Lansdown's alleged action of giving false testimony at Savage's trial. The Court therefore finds and concludes that any official capacity claims Savage asserts against Lansdown and any claims he asserts against the City of Tulsa shall be dismissed, under § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

Second, to the extent Savage sues Lansdown in her individual capacity, the Court must consider whether Lansdown has absolute immunity because each of Savage's claims rest on his allegation, accepted as true, that Lansdown "gave false testimony" at Savage's jury trial. Dkt. 1, at 5, 7, 10. Trial witnesses—including police—have absolute immunity with respect to claims based on their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 328, 343 (1983). As the *Briscoe* Court

13

explained, "Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Id.* at 343. And this absolute witness immunity extends to claims that seek to impose liability based on factual allegations related to preliminary discussions between witness and prosecutor, including claims of conspiracy to present false testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("[A] trial witness has absolute immunity with respect to any claim based on the witness' testimony."). As to this point, the *Rehberg* Court reasoned that the rule of absolute witness immunity

> may not be circumvented by claiming that a [trial] witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution. Were it otherwise, "a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves."

*Id.* at 369 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part)).

Because Savage's individual capacity claims against Lansdown each rest on his allegations that Lansdown conspired to give false testimony at his trial and did, in fact, testify falsely at his trial, Lansdown has absolute immunity as to all individual capacity claims Savage asserts against her. The Court therefore finds and concludes that all individual capacity claims asserted against Lansdown shall be dismissed, under § 1915(e)(2)(B)(iii), because they seek monetary relief against a defendant who is immune from such relief.

Further, because the Court finds and concludes that all claims Savage asserts against Lansdown must be dismissed under § 1915(e)(2)(B), the Court denies as moot the Lansdown Motion.

### III. Motions to Amend

Savage seeks leave to file an amended complaint through three Motions to Amend (Dkts. 31, 38, 45). Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). And "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Id.* at 1366 (quoting *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)).

Further, "even though pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment 'where it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would be futile to give [her] an opportunity to amend.'" *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (alterations in original) (quoting *Gee*, 627 F.3d at 1195)). Finally, "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

For the following reasons, the Court finds and concludes that Savage's proposed amendments would be futile, that all three Motions to Amend shall be denied, and that the Complaint shall be dismissed, in part, with prejudice.

#### A. First Motion to Amend

In his First Motion to Amend, Savage seeks leave to add one new defendant: Tulsa County District Attorney Stephen Kunzweiler. Dkt. 31. Savage asserts that Kunzweiler should "be held

responsible for his criminal and neglectful actions and in aiding and abetting the actions of his appointed Assistant District Attorney Ms. Alison Nutt . . . and case agent Lacy Lansdown." *Id.* at 1. Savage's proposed amendments claim Kunzweiler, acting in his individual and official capacity, deprived Savage of his Fourteenth Amendment rights to due process and equal protection of the laws by "aiding and abetting" Nutt "in her heartless lack of respect for the interest of justice" and by "willfully refusing to perform his required duties" under state law. *Id.* at 2, 9. Savage further alleges Kunzweiler "educated, counseled, and coached" Nutt and Lansdown to present false evidence, thereby depriving Savage of his Eighth Amendment right to be free from discrimination and violating 42 U.S.C. § 1981(a) and § 1981(c); conspired with Nutt and Lansdown to obstruct justice and deprive him of equal protection of the laws through the presentation of false evidence by Nutt and Lansdown, thereby violating § 1985(2) and § 1985(3); and conspired with Nutt to interfere with his civil rights and obstruct justice "by unlawfully attempting to evade this civil action," thereby violating § 1985(2). *Id.* at 3-7.

Savage provides no explanation for his failure to include Kunzweiler as a defendant, or to include these new allegations and claims, in the Complaint. That alone is sufficient reason to deny leave to amend. *Frank*, 3 F.3d at 1366. In addition, these proposed amendments would be futile for four reasons. First, Savage provides nothing more than conclusory allegations to support his claims against Kunzweiler. *Iqbal*, 556 U.S. at 678. Second, the Eleventh Amendment bars, and thus deprives this Court of jurisdiction to adjudicate, any official capacity claims Savage asserts against Kunzweiler. *Chilcoat*, 41 F.4th at 1213; *Robbins*, 438 F.3d at 1080. Third, to the extent Savage asserts individual capacity claims against Kunzweiler for any alleged actions Kunzweiler performed in his role as an advocate, Kunzweiler has absolute prosecutorial immunity. *Chilcoat*, 41 F.4th at 1208. Fourth, and finally, none of Savage's conclusory allegations plausibly suggests

16

that Kunzweiler could be held liable, under a theory of supervisory liability, for any actions Kunzweiler may have performed with respect to his alleged counseling, coaching, or educating of Nutt or Lansdown, even if such actions could not be considered as within "the traditional functions of an advocate." *Kalina*, 522 U.S. at 131; *see also Chilcoat*, 41 F.4th at 1209 ("The public policy considerations that support the protection of prosecutorial functions are not applicable to investigative and administrative acts."). Because the amendments Savage proposes in the First Motion to Amend would be futile and he provides no reason for failing to identify Kunzweiler as a defendant in the Complaint, the Court denies the First Motion to Amend.

### B. Second Motion to Amend

In his Second Motion to Amend, Savage seeks leave to add two new defendants: Tulsa Mayor G.T. Bynum, and Tulsa Police Chief Wendell Franklin. Dkt. 38. He asserts that adding these defendants is necessary "to effectively sue the City of Tulsa in this civil action." *Id.* at 1. Savage further asserts that "the City of Tulsa is responsible for violations of [his] civil rights and should be held responsible" and indicates he intends to sue Bynum and Franklin in both their individual and official capacities. *Id.* at 1, 3. Highly summarized, Savage alleges that he mailed letters to Bynum and Franklin advising them of Lansdown's attempt to violate his civil rights at trial, that he asked Franklin to investigate Lansdown, and that neither proposed new defendant responded to his letters, investigated Lansdown, or prevented Lansdown from giving false testimony at trial. *Id.* at 4-6. Based on these facts, Savage claims Bynum and Franklin violated his Fourteenth Amendment right to due process; conspired with each other and with Lansdown "to promote police corruption," "obstruct justice," and "deny [Savage] the equal protection of the law because [he is] black African American"; and engaged in "discrimination." *Id.* at 6-7. Savage further alleges "there was false evidence collected in violation of the search warrant and 4th

17

Amendment," and that both Bynum and Franklin violated their oath to uphold the Constitution "by indulging in a conspiracy depriving [Savage] of Due process of the 14th Amendment," in violation of § 1985(3). *Id.* at 7-8. He also claims both proposed new defendants "obstructed justice" in violation of § 1985(2). *Id.* at 8.

As previously discussed, Savage effectively sued the City of Tulsa by suing Lansdown in her official capacity and the allegations in the Complaint fell far short of stating any municipal liability claims against the City. Even granting Savage the benefit of liberal construction, it would be futile to add these two proposed new defendants because none of Savage's conclusory allegations plausibly suggests that Bynum, Franklin, or the City of Tulsa could be liable, in any capacity, for the violations of Savage's federally protected rights that allegedly occurred at Savage's trial when Lansdown gave false testimony. *Iqbal*, 556 U.S. at 678. The Court therefore denies the Second Motion to Amend.

### C. Third Motion to Amend

In his Third Motion to Amend, Savage reasserts his request to add Kunzweiler as a defendant and seeks leave to add more allegations against Kunzweiler—i.e., allegations that he did not include in his First Motion to Amend. Specifically, Savage alleges in this motion that Kunzweiler's "actions are motivated by racial profiling," and that Kunzweiler "conspired falsely and maliciously together [with Nutt and Lansdown] to arrest [Savage] before [he] was arrested." Dkt. 45, at 1-2. As previously discussed, it would be futile to permit Savage to add Kunzweiler as a defendant as most, or all, claims Savage attempts to assert against Kunzweiler would be barred by sovereign or prosecutorial immunity. Savage's additional conclusory allegations of "racial profiling" and "conspiring" to arrest Savage do not persuade this Court that it should reconsider

its determination regarding the futility of adding Kunzweiler as a defendant. The Court thus denies the Third Motion to Amend.

### D. Conclusion

For the reasons stated, Savage's proposed amendments amplify, rather than cure, the pleading deficiencies in the Complaint. The Court thus concludes that it would be futile to grant Savage leave to file an amended complaint. The Court further concludes that all claims asserted in the Complaint, other than those claims over which this Court lacks jurisdiction, shall be dismissed with prejudice. *Brereton*, 434 F.3d at 1219.

**IT IS THEREFORE ORDERED** that:

1. the Clerk of Court shall modify the docket to reflect that the Motion to Deny filed October 10, 2023 (Dkt. 37) is a Response in Opposition to the Lansdown Motion (Dkt. 29);

2. the Motion to Dismiss with Brief in Support filed by Defendants the State of Oklahoma and Alison Nutt ("State Motion") (Dkt. 30) is **granted**;

3. the Complaint for Violation of Civil Rights filed March 31, 2023 ("Complaint") (Dkt. 1) is **dismissed without prejudice** in part, under Federal Rule of Civil Procedure 12(b)(1), as to all claims asserted against the State of Oklahoma and all official capacity claims asserted against Alison Nutt, for lack of jurisdiction;

4. the Complaint is **dismissed with prejudice** in part, under Federal Rule of Civil Procedure 12(b)(6), as to all individual capacity claims asserted against Alison Nutt, for failure to state a claim upon which relief can be granted;

5. the Complaint is **dismissed with prejudice** in part, under 28 U.S.C. § 1915(e)(2)(B)(ii), as to all claims asserted against the City of Tulsa and all official

capacity claims asserted against Lacy Lansdown, for failure to state a claim on which relief may be granted;

6. the Complaint is **dismissed with prejudice** in part, under 28 U.S.C. § 1915(e)(2)(B)(iii), as to all individual capacity claims asserted against Lacy Lansdown, for seeking monetary relief against a defendant who is immune from such relief;

7. the Motion to Dismiss Plaintiff's Complaint and Brief in Support filed by Defendant Lacy Lansdown ("Lansdown Motion") (Dkt. 29) is **denied as moot**;

8. Savage's First Motion to Amend (Dkt. 31), Second Motion to Amend (Dkt. 38), and Third Motion to Amend (Dkt. 45) are **denied**; and

9. this is a final order terminating this action and a separate judgment shall be entered herewith.

**DATED** this 15th day of March, 2024.

_____
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE